THE FIRST BAPTIST CHURCH AND CONGREGATION IN STAMFORD *against* ROUSE.

Where a *Baptist* church and the society connected therewith made a contract of settlement with *R*, as their pastor, by which he was to receive a certain salary and the use of a parsonage belonging to the society ; *R* ac-

ceded to the terms, and was duly installed as pastor; about three years *Fairfield,* afterwards, there being hard feelings and alienation among the members June, 1851. of the church and society, and between them and their pastor, the latter, First Baptist with a portion of the church, left the meeting-house where he was in- Church in stalled, and set up regular worship for themselves, first in a large hall, Stamford and then in a new meeting-house, at a considerable distance from the old *v.* one, maintaining, by themselves independently, all the ordinances of the Rouse. gospel, and gathering into their number new members, until they became a large and flourishing church and congregation, having practically no connexion or correspondence with the old church or its members, although no certificates of withdrawal were lodged with the clerk of the old society; the remaining members continued in their meeting-house, fulfilling there, with a new pastor, their appropriate duties respectively; not having ever voted or consented to change their place of worship, or give up any of their rights; in an action of ejectment, brought by the old church and society against *R*, to recover the possession of the parsonage, it was held, 1. that the circumstances above stated were not so decisive in their character, that the court could pronounce a conclusion of law upon them as to the general fact of secession; 2. that they tended to prove it, and were admissible for that purpose; 3. that whether the proof was sufficient, was a question which it was the province of the jury, to determine; 4. that where the court instructed the jury, that upon these facts, they could, with propriety, find the secession, as claimed by the plaintiffs, and that the defendant had abandoned the plaintiffs and their church, and such was the opinion of the court, the question of secession was left to the jury, as a mere question of fact; 5. that the jury having found a verdict for the plaintiffs, they were entitled to retain it.

THIS was an action of ejectment for a small parcel of land in *Stamford*, containing about three roods.

The cause was tried, on the general issue, at *Danbury*, *October* term, 1850.

It was admitted, that the legal title of the demanded premises, consisting of a parsonage, was in the plaintiffs. The defendant claimed, that he was entitled to the possession of the premises, by virtue of a contract with the plaintiffs. The church belonging to said society, it was admitted, gave the defendant a call to settle with them in the ministry, as their pastor; and a church meeting, held, on the 1st day of *November*, 1845, passed the following votes: "Proceeded to deliberate on the propriety of employing Bro. *Henry H. Rouse*, as our pastor, who has now been labouring with us, for several weeks, with reference to a settlement with us, and is now present as a candidate for office. Whereupon it was

"*Resolved*, that we give him a call for the office.

*Fairfield,*
June, 1851.

First Baptist
Church in
Stamford
*v.*
Rouse.

" *Voted,* that we give Bro. *Rouse* three hundred dollars a year, and the use of the parsonage, by hiring the same of the society.

" Bro. *Rouse* accepted the terms proposed.

"*Voted,* that a committee, consisting of brethren Deac. *Hurlburt* and *W. W. Young*, be appointed to agree with Bro. *Rouse* about the terms of payment."

It was admitted, that the committee of the church communicated these votes to the defendant ; that he accepted the invitation, and was duly installed over the church ; and that, by the usages of the *Baptist* denomination, a pastor is employed and settled, by the church worshipping with the society, without the coöperation of the society. It was also admitted, that no person was a member of a *Baptist* society, who was not also admitted a member of the church connected with it ; and that the church and the defendant had, either of them, a right, by the terms of the settlement, to terminate the relation, upon three months notice given by one to the other.

The defendant introduced evidence to prove, and claimed, that the contract of settlement, though made by the church, was made by the society, through the instrumentality of the church ; and although there was no formal vote of theirs, their assent and agreement might be inferred from the evidence, and so they were bound by the terms of the settlement. The court instructed the jury, that such assent might be inferred, if the evidence, in their opinion, warranted it.

The plaintiffs denied that they were parties to the contract of settlement, in any sense whatever ; and claimed, and introduced evidence to prove, that the church had not acted, or pretended to act, for the society, and that the society had never agreed to the terms of settlement ; and that the society were not, and neither the defendant or church understood that the society were, parties to said contract of settlement.

The court left the facts to the jury, remarking that a formal vote was not indispensable ; that consent might be inferred from other satisfactory evidence ; in which case the society would be bound.

The plaintiffs further insisted, that if they were parties to the contract of settlement, yet such were the facts in this case, the defendant had not a right to withhold the parsonage from them, at the time of suit.

*Fairfield,*
June, 1851.

First Baptist
Church in
Stamford
*v.*
Rouse.

It was proved and admitted, that in the last of *March,* 1848, (there being then hard feelings, and alienation, among the members of the church and society, and between them and their pastor, disturbing their harmony,) the defendant, with a portion of the church, (which he claimed was a majority, but which the plaintiffs denied,) and a portion of the society, left the meeting-house where the defendant was installed, and set up regular worship for themselves, with the defendant, as their pastor, in a large public hall in the town, at some considerable distance, and soon erected a new meeting-house, at a like distance in the town, which they took possession of ; that when the defendant and his adherents left the meeting-house of the plaintiffs, and went into said public hall, and thence into their new meeting-house, the church members among them became, and have since continued to be, in fact, a church by themselves, by the name of the "*Bethesda Church,*" with the defendant as their pastor, maintaining by themselves, independently, all the ordinances of the gospel, gathering into their number new members, until, as they claim, they have become a large and flourishing church and congregation, having practically no connexion or correspondence with the church worshipping with the plaintiffs, nor with the plaintiffs themselves, although no certificates of withdrawal have been lodged with the clerk of the society ; that the plaintiffs, and such of the church members as had not left them, remained, as before, in their meeting-house, each respectively fulfilling there his former and appropriate duties, the church having settled a new pastor for the purpose of performing the pastoral duties appropriate to the church and the society ; that neither the society, nor had the church remaining with it, ever voted or consented to change their place of worship, or given up their rights, records or papers, except as implied from these facts; nor have they any connexion with, or controul over the "*Bethesda Church,*" or the people with them, or their house of worship.

Upon these facts the defendant claimed, that the *Bethesda Church* was the true and only church belonging to the society. This the plaintiffs denied ; and insisted, that the church which remained, was the true and only church of the society ;

*Fairfield*,
June, 1851.

First Baptist
Church in
Stamford
*v.*
Rouse.

and that the defendant and his adherents, in going away and building a new house of worship, and doing the other things above stated, without other necessity than what is above stated, was a secession by them, putting an end to the settlement, and any claim of the defendant to retain the parsonage house afterwards.

The court instructed the jury, that upon these facts, they could, with propriety, find the secession, as claimed by the plaintiffs, and that the defendant had abandoned the plaintiffs and their church ; and such was the opinion of the court itself.    And if they found it was so, then the defendant had no right to keep the parsonage after such abandonment.

It was admitted, that the plaintiffs gave the defendant, on the 25th of *April*, 1848, notice to quit in *June* 1848, by a committee appointed for that purpose.    The defendant objected to the sufficiency of the notice, because it was ordered only by the society, at a special meeting in *April*, which meeting was warned by the society's committee ; but there was no evidence, that it was called at the request of a majority of the members of the society, and therefore no legal meeting.    The court held the meeting to be legal.

The jury returned a verdict for the plaintiffs ; and the defendant thereupon moved for a new trial.

*Dutton* and *Ferris*, in support of the motion, contended, 1. That the facts admitted or claimed, on the trial, furnished no evidence of a *secession*.    The rules applicable to *Congregational* societies are not applicable to societies not local.

2. That the question of secession was purely a question of fact, and should have been submitted as such.

3. That the court erred in charging the jury *substantially*, and in deciding, that the defendant had abandoned the plaintiffs and their church, instead of submitting the matter to the jury as a question of fact, whether the defendant had so abandoned and seceded from the plaintiffs.    *Fuller* v. *Crittenden*, 9 *Conn. R.* 406.

*Hawley* and *Butler*, contra, insisted, 1. That upon the facts shewn, there was clearly a *secession* from the church and society of the plaintiffs ; those who remained constituting

the church and society, retaining all the rights and property thereof. *Stebbins* v. *Jennings*, 10 *Pick*, 172. *Sutton* v. *Cole* & al. 8 *Mass. R.* 98. *Milford* v. *Godfrey*, 1 *Pick*. 101. *Brown* v. *Porter*, 10 *Mass. R.* 97. The seceders could, by no act of theirs, affect the rights of the church and society. Whether the facts admitted constituted a *secession*, was, in the first place, a question of law ; and so it is considered and treated in the cases above referred to. But secondly, if it was a question of fact, that question was submitted to the jury ; and they have found that there was a secession.

2. That the seceders, by the act of secession, ceased to be members of the church and society represented by the plaintiffs.

3. That it is enough for the purposes of this case, that the defendant had himself abandoned the church and society, and ceased to officiate therein. His right to remain in the parsonage was thereby terminated. *Angel & Ames* on *Corp*. 425.

4. That the notice to quit, was sufficient. In the first place, there is no law requiring the request of a majority to call a meeting. The meeting itself was a legal one. But secondly, in this case, no notice to quit was necessary. The defendant was not a *tenant* of the church and society, but their *servant* merely, while he remained in their employment. *Hunt* v. *Colson*, 3 *Moore & Scott*, 790. ( 30 *E. C. L.* 319.) *Doe* d. *Waithman* & al. v. *Miles*, 1 *Stark. Ca.* 181.

STORRS, J.  It is conceded before us, that, whether the contract of settlement was made by the defendant, with the members of the church connected with the *Baptist* society, ( the plaintiffs,) or with the society through the instrumentality and agency of the church, the defendant became, by that contract, the pastor of the said society and church ; that he, under the arrangement made, at the time of such settlement, between him and the society and the church, then became entitled to the use of the demanded premises, which was the parsonage belonging to the society, only during the time while that relation continued ; and that the right to the possession of them, therefore, reverted to the society, which was the owner thereof in fee, when such relation ceased : and the only question raised before us respects

*Fairfield*,
June, 1851.

First Baptist
Church in
Stamford.
*v.*
Rouse.

*Fairfield,*
June, 1851.

First Baptist
Church in
Stamford
*v.*
Rouse.

the correctness of the charge below, on the facts admitted by the parties, and detailed in the motion, bearing on the claims made by them respectively as to the termination of that relation; the plaintiffs insisting, and the defendant denying, that, on those facts, such relation ceased. It is conceded, that whether such was the case, depends on the question, whether the defendant had voluntarily abandoned the society, and the church connected with it, and ceased to perform his pastoral duties to them. That there was any justifiable cause shewn for such abandonment and neglect of duty, if it took place, is not claimed.

The defendant insists, that whether he was chargeable with the violation of duty thus imputed to him, was merely a question of fact, on the circumstances admitted, and complains, that it was not submitted as such to the jury, on the trial.

We accede to the claim, that those circumstances presented a question of fact, as to whether the defendant had abandoned the society and church, rather than a question of law. They were not so decisive in their character, that the court could pronounce a conclusion of law from them as to the main fact of such abandonment. So far as their effect is concerned, they tended to prove it, and therefore constituted admissible proof for that purpose; but whether they were sufficient, was for the jury to determine, whose province it was, to draw the proper inference from them. There being on the part of the defendant, no express or declared abandonment of the society or church, the question of such abandonment presented an enquiry of fact of a complex nature, involving the bearing and weight of the circumstances, and therefore to be decided, not by the court, but by the jury on the evidence. If, for instance, the society and church considered it proper and expedient, that the defendant should take the course which he did, and which, on the trial, was claimed to prove a relinquishment of his pastoral relation, and the duties appertaining to it, and therefore, consented to that course, as a temporary measure only, such consent would rebut the inference which might otherwise be drawn from the conduct of the defendant. It does not appear, that there was any evidence of an express assent of that description; but yet, the circumstances admitted between the

*Fairfield,*
June, 1851.

First Baptist
Church in
Stamford
*v.*
Rouse.

parties would present a proper topic of argument and inference on the point, whether the approbation or consent of the society and church was not fairly to be inferred from them. But such inference could be drawn only by the jury, as a matter of fact; and no conclusion of law could arise with respect to it, except as it should depend on the decision of the jury, as to the existence of such assent. The same may be said of other inferences, which might be claimed from the same evidence as qualifying or explaining the conduct of the defendant.

But we think that there is no ground for the exception of the defendant, that the court below decided the question of such abandonment as one of law, instead of submitting it to the jury. It is quite clear to us from the motion, that it was left to the jury, as a mere question of fact. The language of the judge is such, that they could have no doubt that it was his intention to leave the question of secession and abandonment, as claimed by the plaintiffs, to them, to find, as a matter of fact, from the circumstances admitted between the parties. He indeed accompanied the charge with a clear expression of his own opinion as to the weight of the evidence on that point; but the very manner in which he introduced into the charge the expression of such opinion, it being immediately after he had submitted the decision of the question to the jury, shewed, that he did not intend to direct or controul them on that point. It is competent, in all cases, and in many highly expedient, for the court, not only to discuss, but to express its opinion upon, the weight of the evidence, without however, directing the jury how to find the facts; and this is a right necessarily limited only by its own discretion. We are not called on to say, whether such discretion might not be so exercised as to require the interposition of this court, by way of advice, on a motion for a new trial; because in this case, we are entirely satisfied with the course taken by the judge below, in this respect.

The objection made by the defendant, on the trial, as to the validity of the notice to him to quit the demanded premises, given by the plaintiffs, through their committee, has not

*Fairfield,*
*June, 1851.*

been pursued before us; and a reference to the statute on that subject, will shew, that it was unfounded.    *Stat.* 168.

A new trial is not advised.

In this opinion the other judges concurred.

Motion denied